HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLUETOOTH SIG, INC., a Delaware corporation,

    Plaintiff,

  v.

FCA US LLC, a Delaware limited liability company,

    Defendant.

Case No. 2:18-cv-01493-RAJ

ORDER

## I. INTRODUCTION

Before the Court are three motions. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Plaintiff's Motion to Exclude the Expert Report and Testimony of David T. Neal (Dkt. # 57) is **DENIED**; Defendant's Motion to Exclude Christopher Gerardi's Testimony and Opinions (Dkt. # 151) is **GRANTED in part** and **DENIED in part**; and Defendant's Motion to Exclude Michal Malkiewicz (Dkt. # 152) is **DENIED**.

Two preliminary matters: First, in ruling on the parties' cross motions for summary judgment, the Court summarized the facts of this case. Dkt. # 202. To avoid duplication, the Court refers the parties to that order for background information. Second, Defendant's counsel should rethink their use of footnotes. The Court strongly

ORDER – 1

disfavors footnoted legal citations, which serve as an end-run around page limits and formatting requirements dictated by the Local Rules.  *See* Local Rules W.D. Wash. LCR 7(e).  Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult."  *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 n.1 (D. Ariz. Jan. 24, 2014).  The Court strongly discourages the parties from footnoting their legal citations in any future submissions.  *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

## II. LEGAL STANDARD

The admissibility of expert opinions is guided by Federal Rule of Evidence 702, which in part states that an expert by "knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  A trial court must ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).  The testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline," and it is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry."  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval–Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006)).  "Shaky but admissible evidence" is to be attacked by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof," not exclusion.  *Daubert*, 509 U.S. at 596.

## III. DISCUSSION

Plaintiff Bluetooth SIG, Inc. ("Bluetooth") moves to exclude the report and testimony of David T. Neal, an expert offered by Defendant FCA US LLC ("FCA"). Dkt. # 57.  Based on a survey that he conducted, Mr. Neal concludes that FCA's use of

ORDER – 2

the word "Bluetooth" does not make consumers more likely to buy an FCA vehicle. *Id.* at 6. On the other hand, FCA moves to exclude the testimony of Bluetooth's experts, Christopher P. Gerardi and Michal A. Malkiewicz. Dkt. ## 151, 152. Mr. Gerardi opines on the amount that FCA may owe if Bluetooth succeeds, and Mr. Malkiewicz, a rebuttal expert, cites several deficiencies in Mr. Neal's survey. The Court analyzes each motion in turn.

### A. David T. Neal

To "isolate the value that likely purchasers of FCA vehicles place" on the BLUETOOTH word mark, Mr. Neal designed and executed a national survey. Dkt. # 158-7 at 218. The purpose of the survey was to measure the value that consumers place on the BLUETOOTH word mark against the value that they place on the underlying "functionality enabled by the technology." *Id.* at 220.

To that end, Mr. Neal surveyed how different consumers responded to different Monroney labels. *Id.* at 219. Monroney labels, or "window stickers," list specifications about a given vehicle and must be displayed on a new vehicle displayed for sale. *Id.* at 219. About half the survey respondents were randomly assigned and shown the standard Monroney label for the Jeep Grand Cherokee Limited ("Grand Cherokee"). *Id.* The standard Monroney label served as the "Test Condition" and listed as a feature "Integrated Voice Command *with Bluetooth*." *Id.* (emphasis added). The remaining respondents were shown the "Control Condition," which was the same Monroney label but with alternate wording, "Integrated Voice Command *with Wireless Smartphone Connectivity*." *Id.* (emphasis added). The survey then asked all respondents whether they would be willing to buy the Grand Cherokee at various prices, beginning with the manufacturer's suggested retail price and offering several discounts from there. *Id.* at 221. Analyzing the results of the survey, Mr. Neal concludes that "use of the term 'Bluetooth' in describing the wireless smartphone capability of an FCA vehicle does not cause any consumers to be more likely to buy an FCA vehicle at full price . . . [or at] a

ORDER – 3

discount." *Id.* at 224.

Bluetooth argues that this survey, its accompanying report, and Mr. Neal's testimony should be excluded. Dkt. # 57. Bluetooth says that the term "wireless smartphone connectivity" is "completely ambiguous," that the Grand Cherokee is not a representative sample of all FCA vehicles, and that the survey does not replicate marketplace conditions. *Id.* at 8-15. These flaws, Bluetooth says, warrant exclusion under Rules 702 and 403 of the Federal Rules of Evidence. *Id.* at 15.

The Ninth Circuit has long held that survey evidence should be admitted "as long as [it is] conducted according to accepted principles and [is] relevant." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (alterations in original) (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). "Challenges to survey methodology go to the weight given [to] the survey, not its admissibility." *Wendt*, 125 F.3d at 814. This includes challenges to "methodology, survey design, reliability, the experience and the reputation of the expert, critique of conclusions, and the like." *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).

Because Mr. Neal's survey is reliable and relevant, it will not be excluded. Mr. Neal used a "direct survey," which he contended is a "staple[] in the academic literature" and "appear[s] routinely in the pages of top peer-reviewed scholarly journals." Dkt. # 158-7 at 219. Bluetooth does not contest that. Thus, the survey was reliable as it was conducted using accepted principles. Further, the value of the BLUETOOTH word mark (one of three marks at the center of this case) is pertinent to Bluetooth's trademark infringement claims and is therefore relevant. For those reasons, the survey should be admitted above Bluetooth's objections. At most, the survey's alleged flaws of ambiguity, unrepresentative sampling, and unrealistic marketplace assumptions are "technical inadequacies" that "bear on the weight of the evidence, not its admissibility." *Fortune*, 618 F.3d at 1036 (quoting *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988)).

ORDER – 4

Bluetooth suggests, however, that Mr. Neal's use of "completely ambiguous language" is not a technical flaw but a fatal one. Dkt. # 57 at 8. In short, because Mr. Neal did not ask respondents if they knew what "wireless smartphone connectivity" meant, they could have believed that the term in fact included Bluetooth technology. *Id.* at 9. For example, a respondent presented with the Control Condition (the Monroney label saying "Integrated Voice Command with Wireless Smartphone Connectivity") could have believed that the Grand Cherokee being offered was in fact equipped with Bluetooth technology. If that were the case, Bluetooth surmises, the survey would have simply "compar[ed] BLUETOOTH to BLUETOOTH and [the] survey results [would be] completely meaningless." *Id.*

But Bluetooth confuses the value of the BLUETOOTH word mark with the value of the underlying technology itself. Dkt. # 93 at 11. Mr. Neal's survey tested whether consumers placed a premium on "Bluetooth" the word—not Bluetooth the technology. Put differently, Mr. Neal was not measuring whether Bluetooth technology made a consumer more willing to buy an FCA vehicle: he was measuring whether the word "Bluetooth" made a consumer more willing to buy an FCA vehicle. Mr. Neal's survey appears to do just that by comparing the word "Bluetooth" against the phrase "wireless smartphone connectivity." Thus, Bluetooth's claimed ambiguity would have been harmless (or at the very least, non-fatal) to the results of the survey.

For these reasons, Bluetooth's motion to exclude Mr. Neal's report and testimony is **DENIED**.

### B.   Christopher P. Gerardi

Mr. Gerardi, Bluetooth's damages expert, rendered an initial and supplemental report opining on the amounts that Bluetooth may be entitled to in the way of (1) actual damages and (2) disgorgement of profits. Dkt. # 158-7 at 86-92, 328-33. In calculating these amounts, Mr. Gerardi relied on representations that he received from the parties and explained the assumptions that his calculations were based on. *See, e.g.*, *id.* at 329-32.

ORDER – 5

His testimony is both reliable and relevant. It is reliable because Mr. Gerardi applied basic accounting principles—indeed, as FCA puts it, "simple arithmetic" or "elementary mathematical calculations." Dkt. # 151 at 10-11. The Court has no reason to believe that, given Mr. Gerardi's stated assumptions, his calculations are incorrect. And his testimony is no doubt relevant as his calculations bear on Bluetooth's requested relief.

Though reliable and relevant, Mr. Gerardi's actual damages calculations are based on information that Bluetooth received during settlement negotiations. To calculate actual damages, Mr. Gerardi was "advised by counsel" to assume that FCA, had it been a Bluetooth member, would have had to file a specific number of declarations for its Bluetooth-enabled vehicles. Dkt. # 158-7 at 329-30. Bluetooth's counsel, however, received that specified number as an estimate from FCA during settlement negotiations. Dkt. # 171 at 6; *see also* Dkt. # 174-2. This information falls squarely under Rule 408 of the Federal Rules of Evidence, which deems inadmissible a "statement made during compromise negotiations" to "prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408. Thus, to the extent that it relies on information received as part of settlement negotiations, Mr. Gerardi's testimony on actual damages must be excluded.

As for disgorgement of profits, FCA argues that the Court should limit Mr. Gerardi's testimony. Dkt. # 151 at 12-13. According to FCA, Mr. Gerardi assumed that there was "no temporal limitation to the profits that may be disgorged," and he accordingly used 2004 as a starting point for his calculations. *Id.* But laches, FCA says, limits Bluetooth's recovery to the applicable statute of limitations period, and thus Mr. Gerardi's calculations should have begun in 2015. *Id.* The Court will not limit Mr. Gerardi's testimony. As the Court explained in its summary judgment order, laches may bar all monetary recovery. Dkt. # 202 at 27 ("The affirmative defense of laches 'is an equitable time limitation on a *party's right to bring suit . . . .*'") (quoting *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018)) (emphasis added).

ORDER – 6

If FCA indeed prevails on its laches defense, then there would be no need for a "temporal limitation" on Mr. Gerardi's calculations because there would be no disgorgement of profits in the first place. In any event, FCA is free to address any shortcomings in Mr. Gerardi's calculations on cross-examination.

For these reasons, Bluetooth's motion to exclude and limit Mr. Gerardi's testimony is **GRANTED in part** and **DENIED in part**. Mr. Gerardi's testimony is excluded to the extent that it relies on information protected by Rule 408 of the Federal Rules of Evidence.

### C.     Michal A. Malkiewicz

To rebut Mr. Neal's survey testimony, Bluetooth engaged an expert of its own, Michael A. Malkiewicz. Dkt. # 159 at 4. Mr. Malkiewicz argued that Mr. Neal's survey was flawed and unreliable for many reasons: it did not consider that two of the three marks were certification marks, it suffered from "critical sampling issues," and it failed to "replicate the marketplace environment of the vehicle purchasing process," to name a few. Dkt. # 158-7 at 365. In all, Mr. Malkiewicz concludes that Mr. Neal's analysis is "of no use to the question of value of the [BLUETOOTH Marks] . . . [and] of no use in separating out a portion of FCA's sales or profits, if any, that is unrelated to FCA's alleged uses of the [BLUETOOTH Marks]." *Id.* at 366.

To start, Mr. Malkiewicz's testimony appears reliable and relevant. Mr. Malkiewicz has experience in and knowledge of survey research methods and marketing analytics. And he uses that experience and knowledge to undermine Mr. Neal's conclusions about the value of the BLUETOOTH Marks, a central issue in this case. Despite that, FCA asks the Court to exclude Mr. Malkiewicz for three reasons: he is unqualified, his opinions are unreliable, and his opinions would mislead a trier of fact.

First, according to FCA, Mr. Malkiewicz is not an expert "in the area of trademark litigation surveys" but rather is an economist specializing in damages assessments. Dkt. # 152 at 9. As such, FCA says, he is ill-equipped to critique Mr. Neal's trademark

ORDER – 7

survey. *Id.* But an economist may also be trained in survey research methods, as Mr. Malkiewicz is. He was a survey research professional at the National Opinion Research Center and has a certificate in marketing analytics from the University of Chicago. Dkt. # 158-7 at 405, 409. He has also studied graduate-level statistics and survey research methods at Johns Hopkins University. Dkt. # 150 at 5. This is enough to lay at least the "minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" as to survey design and methodology. *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269-70 (9th Cir. 1994) (holding that Federal Rule of Evidence 702 "contemplates a broad conception of expert qualifications" and is "broadly phrased and intended to embrace more than a narrow definition of a qualified expert").

Next, FCA argues that Mr. Malkiewicz's report and testimony do not rest on a reliable foundation: He did not conduct a survey of his own to show that his criticisms would have changed Mr. Neal's results. Dkt. # 152 at 12. He did not fully read some of the materials that he relied on. *Id.* at 13. And other materials, he conceded, lacked basis in any data or relied on data sourced from a survey conducted abroad. *Id.*

But these are deficiencies fit for cross-examination, not exclusion. Mr. Malkiewicz had no obligation to conduct a survey of his own. And the "factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 978 F. Supp. 2d 1053, 1069 (C.D. Cal. 2013) (citing *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). FCA's critiques of Mr. Malkiewicz's report may be persuasive and may even reduce the weight that a trier of fact gives to it, but the Court holds that this is no reason for exclusion.

Finally, FCA argues that Mr. Malkiewicz's report and testimony should be excluded because they would confuse a trier of fact. Dkt. # 152 at 15. The Court disagrees. FCA's list of Mr. Malkiewicz's deficiencies is copious, but it is not confusing.

ORDER – 8

For these reasons, Bluetooth's motion to exclude Mr. Malkiewicz is **DENIED**.

### IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's Motion to Exclude the Expert Report and Testimony of David T. Neal (Dkt. # 57); **GRANTS in part** and **DENIES in part** Defendant's Motion to Exclude Christopher Gerardi's Testimony and Opinions (Dkt. # 151); and **DENIES** Defendant's Motion to exclude Michal Malkiewicz (Dkt. # 152).

DATED this 24th day of June, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 9