HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BLUETOOTH SIG, INC., a Delaware corporation,

    Plaintiff,

v.

FCA US LLC, a Delaware limited liability company,

    Defendant.

Case No. 2:18-cv-01493-RAJ

**ORDER GRANTING IN PART AND DENYING IN PART CERTIFICATION TO FILE INTERLOCUTORY APPEAL**

## I. INTRODUCTION

This matter comes before the Court on Defendant's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) to File an Interlocutory Appeal. Dkt. # 205. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **GRANTED in part** and **DENIED in part**.

## II. DISCUSSION

Defendant FCA US LLC ("FCA") seeks interlocutory appeal on three issues. Dkt. # 205. First, whether the "first sale" doctrine bars all claims asserted by Plaintiff Bluetooth SIG Inc. ("Bluetooth"). *Id.* at 5. Second, whether Bluetooth's actual damages claim and jury trial demand should be stricken. *Id.* Third, whether FCA engaged in

ORDER – 1

counterfeiting under the Lanham Act. *Id.* The Court addresses each issue in turn but first sets forth the standard governing interlocutory appeals.

### A. Legal Standard

"Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1982). "[It] is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1068 n.6 (9th Cir. 2002). Section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). Thus, to grant certification, the district court must find that (1) there is a controlling question of law, (2) there is substantial grounds for difference of opinion, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

Though Congress did not define what it meant by "controlling," the legislative history indicates that the statute was to be used "only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* A "question of law" means a pure question of law, not a mixed question of law and fact or an application of law to a particular set of facts. *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("§ 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts."); *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th

ORDER – 2

Cir. 2000) ("'[Q]uestion of law' means an abstract legal issue rather than an issue of whether summary judgment should be granted.").

"Substantial ground for difference of opinion", on the other hand, asks the court first to determine "to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Often, the requirement is met when "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). "[S]trong disagreement" with a court's ruling is not enough. *Id.* Neither is the fact that "settled law might be applied differently." *Id.*

Matters of first impression may meet this requirement, but they are not themselves sufficient. *See id.* The requirement is not necessarily met "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling." *Id.* Yet the requirement is met "where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed." *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). "[W]hen novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Id.*

### B. First Sale

In its summary judgment order, the Court concluded that the "first sale" doctrine does not apply. Dkt. # 202 at 21-23. The "essence" of the doctrine, the Court explained, is that "a purchaser who does no more than stock, display, and resell a producer's product under the producer's trademark violates no right conferred upon the producer by the Lanham Act." *Id.* (quoting *Sebastian Int'l, Inc. v. Longs Drug Stores Corp.*, 53 F.3d 1073, 1076 (9th Cir. 1995) (per curiam)). The Court held that the doctrine does not apply because Bluetooth is not a "producer" and because FCA does not "resell" head units. *Id.*

ORDER – 3

Bluetooth does not produce and sell head units; it grants licenses to third party suppliers that do. *Id.* FCA does not "resell" the units; it buys them, installs them in its automobiles, and sells the automobiles—far exceeding the stocking, displaying, and reselling a producer's product described in the case law. *Id.*

FCA seeks interlocutory review for two reasons. Dkt. # 205 at 8-11. First, it says that the Court "*suggest[ed]* the first sale doctrine could never apply to licensees or bar infringement claims asserted by a certification mark owner." *Id.* (emphasis added). FCA may divine whatever "suggestion" it wishes from the Court's order. But the order speaks for itself, and as Bluetooth explains, the Court made no such finding. Dkt. # 206 at 8. The Court will not grant an interlocutory appeal of a conclusion it did not reach.

Second, FCA says that given a "line of district court cases cited approvingly in *Au-tomotive Gold*," the Court should permit interlocutory appeal of "whether the [first sale] doctrine may be applied when a trademarked product has been incorporated in a new product." Dkt. # 205 at 11. The Court finds that this issue is indeed fit for interlocutory appeal.

The issue meets all three requirements of § 1292(b). It presents a controlling question of law that will not require the court of appeals to delve deep into the record. And as an affirmative defense, its resolution may be dispositive, materially advancing the termination of the case.

It also raises novel and difficult questions of first impression. To be sure, the Court properly applied the current law as articulated in *Sebastian*: the first sale doctrine applies to "a purchaser who does no more than stock, display, and resell a producer's product," which is not the case here. Dkt. # 202 at 21-23; *Sebastian*, 53 F.3d at 1076 ("When a purchaser resells a trademarked article under the producer's trademark, *and nothing more*, there is no actionable misrepresentation under the statute." (emphasis added)). The first sale doctrine at bottom does not apply because FCA incorporates a trademarked head unit into its own automobiles and sells the automobiles. It does not

ORDER – 4

"resell" the head units. That was the issue raised and decided on summary judgment. But the question now before the Court is not whether its summary judgment ruling was correct but whether "fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688. Given the current precedent, the Court concludes that they could.

Years after its decision in *Sebastian*, the Ninth Circuit in *Au-Tomotive Gold Inc. v. Volkswagen of America, Inc.*, 603 F.3d 1133, 1137 (9th Cir. 2010) cited approvingly of several district court decisions. Those district courts, in other circuits, applied the first sale doctrine when "defendants incorporated the trademarked product into a new product." *Id.* As this Court explained, this portion of the *Au-Tomotive Gold* opinion was dicta. Dkt. # 202 at 23. The *Au-Tomotive Gold* court ultimately found that the first sale doctrine did not apply. 603 F.3d at 1138-39. Though it cited the district court decisions approvingly, it ultimately "did not adopt those decisions." Dkt. # 202 at 23. Nor did it reconcile those decisions with the Ninth Circuit's previous holding in *Sebastian*. *See id.*

In deciding *Au-Tomotive*, the Ninth Circuit did not overrule *Sebastian* or supply a rule that the Court could apply here. It did not expressly hold for this circuit that the first sale doctrine also applies when defendants incorporate trademarked products into a new product. *Au-Tomotive* revealed, however, that fair-minded jurists in other circuits have thought so. Thus, fair-minded jurists could disagree with the Court's decision, applying *Sebastian*, that FCA was not protected by the first sale defense because it incorporated trademarked head units into its own automobiles. For purposes of interlocutory appeal, the Court concludes that there are substantial grounds for difference of opinion on its first sale ruling.

### C. Damages

In addition to summary judgment, FCA moved to dismiss Bluetooth's damages claim. Dkt. # 202 at 8-11. FCA pushed an elaborate argument. Dkt. # 189 at 6-8. According to FCA, Bluetooth is not really seeking Lanham Act damages. Dkt. # 189 at 6-8. FCA said that Lanham Act damages are measured by injury or lost profits and that

ORDER – 5

Bluetooth claims neither. *Id.* Bluetooth only seeks "lost declaration fees," which in FCA's view are not the same as lost profits. *Id.* And Bluetooth can claim no actual injury because it incurred no "administrative fees" given that FCA did not obtain any declarations. *Id.* In sum, FCA argued, any theory of recovery for "lost declaration fees" must proceed by way of contract, which is impossible because there was no contract between Bluetooth and FCA. *Id.*

In its previous order, the Court explained that FCA's argument was confused:

> Under the Lanham Act, a plaintiff may recover, subject to principles of equity, (1) defendant's profits, (2) plaintiff's damages, and (3) costs of the action. 15 U.S.C. § 1117. In the trademark context, "semantic confusion" abounds because plaintiff's "damages" may refer to many bases of monetary recovery. 5 McCarthy § 30:57. Indeed, plaintiff's damages may be measured by both plaintiff's actual business damages and its own loss of profits. *Id.*; *see also id.* § 30:79.
>
> Such confusion found its way here. Bluetooth hopes to recover, among other things, "lost fees." Dkt. # 156 at 30. These would be the fees that FCA would have paid had FCA been a Bluetooth member and had it declared its products. *Id.* Bluetooth labels these as "actual damages." *Id.*
>
> . . . .
>
> . . . . Dispelling any semantic confusion, *the Court finds that Bluetooth's request for "lost declaration fees" is in fact one for "lost profits." As discussed above, "lost profits" are considered "actual damages" and are thus recoverable under the Lanham Act.* 5 McCarthy §§ 30:57, 30:79. Hence, Bluetooth may indeed recover lost profits without asserting the existence of a contract.

Dkt. # 202 at 9-11 (emphasis added). The Court then likened, by analogy, Bluetooth's request for "lost declarations" to a "reasonable royalty," "which *can* be an appropriate measure of damages under the Lanham Act." *Id.* (emphasis added). The Court did not hold that Bluetooth was, *in fact*, seeking a reasonable royalty—the Court employed the analogy simply to reject FCA's argument that Bluetooth's damages theory was not cognizable under trademark law. Given the above, the Court did not dismiss Bluetooth's damages claim as FCA requested. Dkt. # 202 at 11.

ORDER – 6

Undeterred, FCA now seeks interlocutory appeal on "whether [Bluetooth] has set forth a cognizable damages claim, and thus is entitled to a jury trial." Dkt. # 205 at 6. Yet FCA fails to show how this issue meets any of § 1292(b)'s requirements. The Court finds that none of the three requirements have been met.

FCA raises no controlling question of law. Its arguments are almost entirely factual, such as what the membership agreements said, what the licensing agreements said, and what witnesses testified to. Dkt. # 205 at 11-14. It also raises no substantial ground for difference of opinion: no circuit split, no complicated question under foreign law, no matter of first impression. *Id.* Finally, it does not explain how this issue would materially advance the termination of the case. *Id.* At most, the resolution of this issue would affect the amount of damages that Bluetooth is entitled to and whether the case is tried before a judge or jury, neither of which would dispose of the case.

To put a finer point on it, the Court believes that Bluetooth identifies the absurdity of FCA's damages argument well: "FCA's assertion is akin to someone stealing a car from a car dealership and then arguing that he does not owe the car dealership any money for the car because he never entered into a purchase agreement." Dkt. # 206 at 11-12. The Court correctly rejected this argument on summary judgment and rejects it again here. Because FCA has failed to satisfy any of § 1292(b)'s requirements, it has failed to show why this issue is fit for interlocutory appeal.

### D. Counterfeiting

In its previous order, the Court denied summary judgment to both parties on Bluetooth's claim for trademark counterfeiting. Dkt. # 202 at 18-20. On summary judgment, FCA argued that it could not possibly be liable for counterfeiting because the head units are genuine and supplied by licensed third parties. Dkt. # 150 at 17-18. Although the head units are "no doubt genuine," the Court explained, so long as "FCA installs the units in its vehicles, advertises features of the vehicles using Bluetooth's marks, and sells the vehicles containing the units, all without obtaining Bluetooth's

ORDER – 7

authorization, FCA is engaged in counterfeiting as defined by the Lanham Act." Dkt. # 202 at 18-20. Ultimately, however, the Court denied summary judgment to both parties. *Id.* Whether FCA's use of Bluetooth's trademark created a likelihood of confusion raised factual issues, and the counterfeiting claim survived. *Id.*

Now, FCA seeks interlocutory appeal on "whether head units FCA purchased from authorized third-party suppliers were 'counterfeit' under the Lanham Act." Dkt. # 205 at 6. Principally, FCA argues that the Court misapplied *State of Idaho Potato Commission v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). *Id.* at 14-16. It argues that the facts in *Idaho Potato* are "readily distinguishable" from the facts here. *Id.*

FCA's argument fails for two reasons. First, FCA's arguments are primarily factual. For example, it argues that *Idaho Potato* is distinguishable because in that case "no evidence showed [that] the growers specifically certified the potatoes," whereas here "FCA's suppliers followed all of [Bluetooth]'s quality control procedures . . . before FCA purchased them." Dkt. # 205 at 15. To assess FCA's arguments, a reviewing court would have to search beyond the surface of the record and make factual determinations. The Court finds no controlling question of law, one separate from fact or application of law to facts. Thus, FCA fails the first requirement of § 1292(b).

Second, FCA fails to identify a substantial ground for difference of opinion. It identifies no circuit split, no complicated question under foreign law, no matter of first impression. At best, FCA disagrees with the Court's application of *Idaho Potato*. "[S]trong disagreement" with the Court's order and the possibility that "settled law might be applied differently" are not enough to satisfy the second requirement of § 1292(b). *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

As to the last § 1292(b) requirement, FCA argues that interlocutory appeal would materially advance this case "by avoiding unfair prejudice to FCA at trial." Dkt. # 207 at 10. According to FCA, the Court declared that "FCA engaged in counterfeiting," a

ORDER – 8

statement it believes might be used against it later. Dkt. # 205 at 6. This argument is unconvincing. To start, FCA must show that all three § 1292(b) requirements are met. As the Court already explained, it has failed the first two. Further, the Court's declaration must be read in context. The Court did not grant summary judgment to either party on Bluetooth's counterfeiting claim. Any reference to FCA as a "counterfeiter" at trial would be inaccurate and premature and could be handled through pre-trial evidentiary motions. Finally, FCA does not seriously explain why removing this speculative prejudice might bring this matter closer to ultimate termination. FCA suggests that resolving this issue could "obviat[e] a potential new trial." Dkt. # 207 at 10. The Court finds this benefit speculative and determines that any "advancement" to be had by interlocutory appeal would hardly be "material."

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion for Certification Pursuant to 28 U.S.C. § 1292(b) to File an Interlocutory Appeal. Dkt. # 205. FCA's request for § 1292(b) certification is **GRANTED** as to the first sale issue and **DENIED** as to the damages and counterfeiting issues.

DATED this 13th day of May, 2021.

_Richard A. Jones_
The Honorable Richard A. Jones
United States District Judge

ORDER – 9